IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KIMBERLY SNEAD,

    Plaintiff,

v.  No. 08-1064 B

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION

This action was initially brought by the Plaintiff, Kimberly Snead, in the Chancery Court for Henry County, Tennessee on March 3, 2008 against the Defendant, Nationwide Property and Casualty Insurance Company ("Nationwide"). The matter was removed to this Court on March 5, 2008 pursuant to 28 U.S.C. § 1332.[1] The suit arose from a policy of insurance issued by Nationwide to the Plaintiff covering her residence located at 1105 Brown Street in Paris, Tennessee (the "Property"). Snead alleges breach of contract and unfair and deceptive practices in violation of the Tennessee Consumer Protection Act ("TCPA"). Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

SUMMARY JUDGMENT STANDARD

Rule 56 states in pertinent part that a

---

[1] The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States . . ." 28 U.S.C. § 1332(a)(1).

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on her pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir.1994).

## FACTS

The following material facts are undisputed. On or about January 3, 2006, Snead applied for a property insurance policy on her residence. (Aff. of Delma Locke, Jr.[2] ("Locke Aff.") at ¶ 2.) She placed her signature on the completed application for insurance. (Locke Aff. Ex. A.) In doing

---

[2] Locke is identified in the affidavit as the Property Product Manager for Nationwide in the states of Arkansas, Kentucky, Mississippi and Tennessee. (Locke Aff. at ¶ 1.)

so, she attested that "I hereby declare that the facts stated in the above application are true and request the Company to issue the insurance and any renewals thereof in reliance thereon." (Locke Aff. Ex. A.) The application reflects that the residence had thermostat controlled central heating. (Locke Aff. Ex. A.) As of January 3, 2006, the home did not have a central heating unit that was thermostat controlled. (Ans. to Def.'s First Reqs. for Admission to Pl. at 1.) The Property was in fact heated by space heaters. (Ans. to Def.'s First Reqs. for Admission to Pl. at 2.) Between January 3, 2003 and January 3, 2006, the Plaintiff suffered a loss to the Property in the form of tornado/wind damage to siding and trees. (Ans. to Def.'s First Reqs. for Admission to Pl. at 5.) The application indicated that there had been no past losses. (Locke Aff. Ex. A.) A homeowner's policy covering the Property was subsequently issued to the Plaintiff. (Locke Aff. at ¶ 3.) On March 19, 2007, the Property was damaged by fire. (Compl. at ¶ 6.)

## ARGUMENTS OF THE PARTIES AND ANALYSIS

The Defendant contends that it is entitled to summary judgment on the grounds that Snead made material misrepresentations on her application for insurance concerning the existence of a thermostat controlled heating system and the absence of a past loss. The substantive law of Tennessee applicable to insurance contracts governs this case. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938) (in cases based on diversity jurisdiction, a court is to apply the substantive law of the state in which it sits).

The question of whether Snead made material misrepresentations on the application for insurance is governed by Tennessee Code Annotated § 56-7-103, which provides that

> [n]o written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or

3

>  warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

The statute "authorizes an insurance company to deny a claim for benefits in two circumstances -- if the insured made intentional misrepresentations on the application for insurance or if the insured made misrepresentations that increased the insured's risk of loss. . . . Determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." Smith v. Tenn. Farmers Life Reassurance Co., 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006), *app. denied* (Nov. 13, 2006). Under the statute, an insurance company is authorized to "deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss. A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract." Lane v. Am. Gen. Life & Accident Ins. Co., 252 S.W.3d 289, 295-96 (Tenn. Ct. App. 2007), *app. denied* (Apr. 7, 2008). "It need not involve a hazard that actually produced the loss in question." Id. at 296.

"The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss." Id. "Additionally, the courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." Id. But evidence that the insurer would not have issued the policy had the truth been disclosed is not necessary. Id.

As noted above, the Plaintiff has admitted that the Property was not equipped with a thermostat controlled central heating unit at the time the application was executed. (Ans. to Def.'s

4

First Reqs. for Admission to Pl. at 1.) She also acknowledges a past loss to the Property. (Ans. to Def.'s First Reqs. for Admission to Pl. at 5.) Accordingly, there is no factual dispute that the answers to these questions as set forth in the application are false.

The Court next considers whether Snead made misrepresentations that increased the insured's risk of loss. *See* Smith, 210 S.W.3d at 589. The Defendant offers the affidavit of Locke, in which he states as follows:

> The failure of Kimberly Snead to disclose the proper facts concerning the absence of thermostat controlled central heating and the existence of the prior loss in the application for insurance denied Nationwide Mutual Fire Insurance Company the ability to further and completely investigate the insurability of Kimberly Snead and the property located at 1105 Brown Street, Paris, Tennessee 38242.
>
> The failure of Kimberly Snead to disclose the proper facts concerning the absence of thermostat controlled central heating and the existence of the prior loss increased Nationwide Mutual Fire Insurance Company's risk of loss in the matter.
>
> The absence of a thermostat controlled central heating system, and the existence of a prior loss, increased the risk of loss as to Kimberly Snead and the property located at 1105 Brown Street, Paris, Tennessee 38242, when compared with the information provided by Kimberly Snead in the application for insurance . . .
>
> Had Nationwide Mutual Fire Insurance Company known prior to the issuance of the policy to Kimberly Snead that the property located at 1105 Brown Street, Paris, Tennessee 38242 was in fact not equipped with a thermostat controlled central heating system, and that Kimberly Snead had in fact suffered a loss within 3 years of the date of the application, its evaluation of the risk of loss would have been different, and these facts would have affected its decision as to whether to charge a higher premium, write a different policy or whether to even write the policy at all.

(Locke Aff. at ¶¶ 8-11.)

In response, the Plaintiff has offered nothing to contravert the proof presented by the Defendant. Therefore, upon review of the evidence, the Court concludes that Nationwide has carried

its burden of showing that Snead made misrepresentations that increased the insured's risk of loss. *See* Smith, 210 S.W.3d at 589.  Accordingly, Nationwide was permitted to deny benefits under the homeowner's policy.  *See* Redmond v. Great Am. Ins. Cos., No. 3A01-9801-CH-00034, 1998 WL 334392, at *1-3 (Tenn. Ct. App. Jun. 25, 1998) (court found insured's failure to disclose prior wind loss increased risk of loss for § 56-7-103 purposes even if prior loss was relatively small and had no connection with later fire loss); Patch v. Am. Summit Ins. Co., No. C7-96-1581, 1997 WL 20336, at *2-3 (Minn. Ct. App. Jan. 21, 1997) (absence of central heating system made it more likely that an alternative heating source would be used and, therefore, increased risk of loss to insurer in case involving misrepresentations under similar statute).

Snead submits that her claims should nonetheless be allowed to proceed on the grounds that she failed to read the application before she signed it.  However, the plaintiff in Smith pressed a similar argument, resulting in the following finding by the court:

> Ms. Smith seeks to buffer the effect of Tenn. Code Ann. § 56-7-103 on her claim by pointing out that neither she nor Mr. Smith read the applications or other forms connected to the application for Mr. Smith's insurance policy before they signed them.  We have addressed the "but I didn't read it" defense many times before, and the law in Tennessee on this issue has been long settled.  The failure to read an application for insurance does not insulate an applicant from errors or omissions in a signed application.  A party's signature binds him or her as a matter of law to the representations in the signed document.

Smith, 210 S.W.3d at 591 (citing Beasley v. Metro. Life Ins. Co., 229 S.W.2d 146, 148 (Tenn. 1950); Giles v. Allstate Ins. Co., Inc., 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993); Montgomery v. Reserve Life Ins., 585 S.W.2d 620, 622 (Tenn. Ct. App. 1979)) (internal footnotes omitted); *see also* Wear v. Transam. Life Ins. Co., No. 3:06-cv-244, 2007 WL 3238867, at *10 (E.D. Tenn. Nov. 1, 2007) (plaintiff's claim she did not understand the questions posed in the insurance application is

6

no excuse, as she should not have signed it under such circumstances).

The Plaintiff's attempts to distinguish these cases are unavailing. First, she relies on the following language set forth in Morrison v. Allen, No. M2007-01244-COA-R3-CV, 2009 WL 230220 (Tenn. Ct. App. Jan. 30, 2009), *reh'g denied* (Feb. 27, 2009), to wit:

> under Tennessee law, an insured who does not read the insurance application may recover from someone with superior knowledge upon whom he relies in the completion of the application, whether that someone is the insured's agent/broker or the insurance company acting through its own agent, when that person makes a material mistake or misrepresentation in the application.

Morrison, 2009 WL 230220, at *5 (internal footnotes omitted). The Plaintiff fails, however, to quote the footnote contained in the cited language, which states: "Note that we are talking about recovery *from an agent/broker for failure to procure a policy, not recovery against an insurer on a policy.*" Id. n.5 (emphasis added). In cases seeking recovery of benefits from an insurer on a policy, such as that at bar, the Morrison court reiterated the holding in Smith, stating that "[i]t is well established that the 'I didn't read it' defense is not effective against the company issuing the policy." Id. at *9 (citing Smith). Thus, Morrison appears to support the Defendant's position, not Snead's.

Snead also cites to Thomas v. Allstate Insurance Co., 443 F.2d 1123 (6th Cir. 1971) for the proposition that the jury's verdict for bad faith was supported by evidence that

> Allstate would never have initiated a policy investigation to determine the correctness of the insured's answers in the application until it learned that it was confronted with a possible liability in a considerable amount; that Allstate through its agent either negligently or intentionally placed false information in the application directly contrary to the information supplied by the insured; that the Insurance Company did not concern itself with making inquiry of its agent as to the alleged error in the application until long after the claim had emerged; and numerous other facts indicative of bad faith.

7

Thomas, 443 F.2d at 1125-26. However, bad faith has not been alleged in this case. Moreover, while the issue of whether the insured made a material misrepresentation of fact with respect to a matter which increased the risk of loss under Tennessee law was addressed by the lower court, it was not directly before the Sixth Circuit on appeal and, therefore, was not discussed in the cited opinion.

The Plaintiff also argues that Nationwide should not have relied upon any misrepresentations in the application because it was aware of the past loss and the fact that the house did not have central heating. In an affidavit filed contemporaneously with her response to the instant motion, Snead asserts that, shortly after the policy was issued, she was contacted by the Defendant concerning a "Home Care Review" and instructed to provide information relative to the home's value. (Aff. of Kimberly Snead ("Snead Aff.") at ¶¶ 7-8.) In response, Snead forwarded to the Defendant a real estate listing for the Property indicating that it was heated by a gas floor furnace. (Snead Aff. at ¶ 9.) With respect to the wind damage, Snead states in her affidavit that she disclosed information concerning the incident to the Defendant's customer service representative, who asked for copies of photographs of the downed tree limbs. (Snead Aff. at ¶¶ 11-13.) She could not recall if she ever provided the photographs. (Snead Aff. at ¶ 13.)

The Plaintiff also points to deposition testimony of Bob Miller and Tom Clark. Miller, a Nationwide agent, observed and photographed the exterior of Snead's home to determine the insurability of the structure. (Dep. of Bob Miller ("Miller Dep.") at 11-12.) According to Miller, part of that inspection would have included looking to see if there was a central heating and air unit. (Miller Dep. at 12)[3] Clark of Reliable Reports, Inc. also visited the Property on Nationwide's behalf

---

[3]Miller also testified in his deposition that he could not recall whether he observed an outdoor central heating unit at the home but would not have been concerned had he not seen one, as it was common for structures of that age to have such systems located in the basement.

for the purpose of confirming that the structure existed at the location and to observe its general condition.[4] (Def.'s Resp. to Pl.'s First Set of Interrogs. and Req. for Prod. of Docs., Interrog. No. 3.)

Even assuming the truth of the evidence presented by the Plaintiff, Snead has referred the Court to no case indicating that this alleged knowledge on the insurer's part absolves her from responsibility to read the application. Indeed, the caselaw cited by the Defendant in its reply suggests otherwise. In State Farm General Insurance Co. v. Wood, 1 S.W.3d 658 (Tenn. Ct. App. 1999), *app. denied* (Jul. 6, 1999), the insureds indicated on the application for insurance form, which they signed, that they had suffered no prior losses within the preceding three years. Wood, 1 S.W.3d at 660. The court noted that Mrs. Wood "voluntarily had told [the agent] about [an] earlier fire. In any event, the question was clearly answered in the negative on the application. The parties stipulated that either Mr. or Mrs. Wood signed the application." Id. On those facts, the court held that the insureds' failure to disclose the prior loss, which it found increased the insurer's risk of loss, on the application precluded recovery. Id. at 662-63.

Similarly, the plaintiffs in Redmond provided information for the application to the insurer over the telephone. Redmond, 1998 WL 334392, at *1. The plaintiffs offered testimony that, when they reviewed the prepared application and became aware of errors therein, they called the insurer in order to set the matter right. Id. The court held that the applicants nonetheless made a misrepresentation that increased the insurance company's risk of loss permitting the insurer to deny

---

(Miller Dep. at 26-28.) He assumed the existence of a central heating unit based upon the application. (Miller Dep. at 27.)

[4]As is reflected in Clark's report, whether the home had a central heating unit was not part of his inspection. (*See* Def. Nationwide Prop. & Cas. Ins. Co.'s Resps. to Pl.'s Stmt of Additional Relevant Facts, Ex. 4 (Rep. of Tom Clark).)

benefits, observing that "[i]n any event, the plaintiffs did not correct the admittedly false answers [on their application], as they might easily have done." Id. at *1-2.

To the extent the Plaintiff's TCPA claim survives the Court's findings hereinabove, summary judgment is appropriate.[5]  In her complaint, Snead alleged that "[t]he Defendant has engaged in unfair and deceptive practices in denying the Plaintiff's claim for damages and attempting to terminate her homeowner's insurance policy retroactively in violation of the" TCPA. (Compl. at ¶ 13.)  The TCPA provides that

> [a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1).  "Though the TCPA does not define the terms 'unfair' or 'deceptive,' the Tennessee Supreme Court has recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer." Cloud Nine, LLC v. Whaley, No. 3:07-CV-154, 2009 WL 1748745, at *6 (E.D. Tenn. Jun. 19, 2009) (citing Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997)).  Acts and practices of insurance companies are within the ambit of the TCPA. Williamson v. Aetna Life Ins. Co., No. 04-2851 B, 2005 WL 3087861, at *4 (W.D. Tenn. Nov. 17, 2005), *aff'd* 481 F.3d 369 (6th Cir.), *cert. denied sub nom.* Welshans v. Aetna Life Ins. Co., ___ U.S. ___, 128 S. Ct. 671, 169 L. Ed. 2d 514 (2007). However, it has been held that an insurer's conduct in denying a claim based on substantial legal

---

[5] *See* Schorr v. Sec. Indem. Ins. Co., No. 00-3106 D/V, 2001 WL 1900708, at *2-4 (W.D. Tenn. Aug. 30, 2001) (plaintiff's TCPA claim analyzed and summary judgment granted pursuant to Tennessee Code Annotated § 56-7-103).

grounds does not come under the purview of the statute.  *See* Stooksbury v. Am. Nat'l Prop. & Cas. Co., 126 S.W.3d 505, 519-21 (Tenn. Ct. App. 2003), *app. denied* (Jan. 26, 2004).  As the Court has concluded that Nationwide denied Snead's claim on substantial legal grounds, the TCPA clam must fail.

## CONCLUSION

Based on the foregoing, the Defendant's motion for summary judgment is GRANTED and this case is DISMISSED in its entirety.

IT IS SO ORDERED this 29th day of June, 2009.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE